N1373 John Mezzalingua Associates Against the International Trade Commission When you're ready Thank you, your honors. My name is Richard Strout. I have the honor of being supported by my partner, Troy Grebo, and my partner, Don Burley, and most significantly, John Mezzalingua, my client. This case concerns primarily the claim construction of the means plus function engagement means. It is our belief that once that construction is corrected, that then the technical prong issue will go in our favor, our product is covered by that, and that we will be entitled to a general exclusion order based upon the findings of record and the acceptance by the Commission of those findings. But just on that point, that would be premature for us to do it. Your honor, I think that, in fact, your honors would have the authority to do that in that the findings of fact in the comparison of the device, of our device with the claims, is of record and the only question is whether or not it includes the second shoulder. There's no question that our device does include the first shoulder. But there's no Commission finding on remedy or on bonding? With respect to, yes, your honor, I think that in short circuit, this court has the absolute clear discretion to remand to the ITC and allow the ITC to then do its business. What are the first and second positions in the claim here? Sorry. What are the first and second positions in the claim? Very good, your honor. Your honor, if we look at the figures in the patent. Just tell me what the first and second positions are first. The first position, your honor, is is when the elements are assembled such the fastener locking member is assembled with the connector body and in that first position the first shoulder, 50A, is in the notch. Okay, what's the second position? The second position, your honor, is when the cable is gripped between the connector body and the fastener member, which is caused by the movement forward of the fastener member with the cable into the connector body until gripping occurs. So it's not when 50B is in the notch, the second one? No, your honor. If you look at the claim in its entirety, the claim clearly discloses towards the end that the second position occurs at the time gripping occurs and the cable is between the locking member and the connector body. So the claim itself defines that second position and it does not define it. It does not define that second position to be the preferred embodiment that includes the locking feature provided by the second shoulder, 50B. It instead defines it as when the cable is gripped. There may be a little confusion here. Let me see if I understand what you're saying. If I understood the two positions, I thought the positions were first position as you described it. Second position is the collapsed position where it so happens, at least in the in the diagrams, and in Dependent Claim 4, that at that second position, 50B does snap into the notch, correct? Now this is setting aside the question of whether 50B is essential to be the engagement means and so forth and so on. But if you ask the question of what the second means is, I mean the second position is, the second position is the position which, if you have the shoulder 50B, that shoulder snaps into the notch, correct? I think that is correct, Your Honor, that if you apply the preferred embodiment disclosed, which includes second shoulder 50B, and the one claimed in Claim 4, in that embodiment the gripping occurs and the additional locking feature of the preferred embodiment occurs at the same time, and at that time the second shoulder 50B is indeed in the groove. And you are in the second position? The second position is generically disclosed in Claim 1. It's not requiring that. I understand, but you happen to be in the second position. But in the preferred embodiment where you have the second position, yes, if the preferred embodiment includes the locking feature, then second shoulder B is indeed at the second position there, as required by some of the dependent claims, and as disclosed as a preferred embodiment, and the embodiment disclosed, yes. And there's no disclosure of a single shoulder embodiment? There, well, there is a disclosure of the single embodiment in that the preferred embodiment includes the single and the second. There is no disclosure that shows only, illustrates only. That is correct, Your Honor. So the question... If we're talking about your embodiment, this alternative embodiment, tell me again what the second position is since there's no second shoulder to fit into the notch. Yes, Your Honor. Where is the second position? If you look at Claim 1, Your Honor, and there are lots of words used here, but it refers at the end of Claim 1, the last two lines, when in the second position to grip the outer annular portion of said cable there between. The words above that require that the cable be placed in the annulus, and then it indicates that it will be between the locking member and the connector body, and then as it moves forward, the second position is achieved according to Claim 1 at the time the cable is gripped between the connector body and the fastener. If I understand what you're saying, you're saying, I think, that Figure 5 illustrates the second position for the three components, and that that figure would read on Claim 1 whether it had 50B, or if you took a file and you filed down the 50B shoulder, you would still be in second position, and you would still, the Claim 1 would still read on that structure. Is that correct? That is correct. More broadly, Your Honor, the term uses a first and a second position, broadly, so that not only is gripping achieved at what is shown in Figure 5, at that location, but gripping is also going to be achieved at any number of positions before that is achieved. In other words, this is a compression device. The compression device works by compressing the cable between two elements, so there is not a precise and wonderful point in time when gripping achieves or not. That's why the claim broadly uses a first position and a second position. It doesn't say a first position and a locked position. It doesn't, it is not limited to the preferred embodiment, which indeed does include 50B. So that, if that clarifies that, Your Honor. So then the question is, should Claim 1 be limited to the preferred embodiment? Now this court's case law makes it abundantly clear in the routine matters that it is not appropriate to limit a claim to the preferred embodiment unless that claim specifically is directed to that preferred embodiment, specifically claims that preferred embodiment. The language requires that preferred embodiment. That we do not have here. Instead, the, it, is directed to an embodiment that achieves the embodiment with figure with shoulder 50A alone achieves everything required by the claim language. Well, I guess the problem is what it really turns out what second position means, because if second position means that the shoulder 50B is in the notch, you lose, right? Whereas if second position is the clamped position or whatever you want to call it, then it's consistent that 50A can perform the claim limitation. I think that's a fair statement, Your Honor. I think that if Your Honors ultimately look at the claim and conclude that it is limited to only the position shown in Fig. 5 and requires 50B, we lose. Now, let me discuss that for a moment, because if we look at the claim, to construe the claim, two things have to happen. First, we have to determine the function. Second, we have to determine the corresponding structure. Now, if we determine the function, you look at these claims, the claim 1, there were some rejections. The claims were then amended and the operation, grammar, etc., that was used in claim 1 is to require that the engagement means co-act one, to inseparably couple, and two, to accommodate limited axial movement. The patentee used that criteria to define the functions, and you will see in the prosecution history as we explain what was added, and you will see if you look at claims 2 and 4, that was used again. When they wanted to use function, to add a function, claim 2 says, wherein the engagement means additionally coax, to yieldably resist. To resist. Claim 4, where the engagement means additionally coax, to fix. So the patent owner has used the grammar of saying coax, to blank, here's function 1, first function, couple, to, here's function 2, accommodate, and then with respect to the dependent claims, which are directed to the preferred embodiment, it uses additionally coax, to resist, or to fix. So the functions are defined by those words, to, verb. What the commission has done has taken an adjective, limited, and made it into a function. They've said that it has to limit the movement backward out of the second position. In doing so, there is no support whatsoever for that function in the specification. If one reads the specification, if one looks at the drawings, then one concludes that there is no teaching whatsoever of any structure that will resist forward movement. It seems to me the problem that that this patent presents for us in connection with the engagement means, is that it defines engagement means at least arguably in a somewhat fluid manner, because it says at one point the engagement means preferably comprises first and second actually supported shoulders 58 and 50B. Your contention as well, but that's a preferred embodiment. That is not structure which is necessary to perform the role of the engagement means, which is only to perform the role performed by 50A. But the term engagement means is used both there and again in Claim 4 to include the structure 50B. So the question is why is that structure of 50A and 50B not properly considered to be the engagement means? Well, I suppose that if it is, then I think that the proper decision is you have alternative engagement means disclosed. That's pretty much has to be your position, doesn't it? 50A alone, which meets all the limitations of Claim 1, and it also can include as an alternate embodiment 50A and 50B, which also meet all the additional restrictions of Claims 4 and 2 and 10. So, yes, your honor, I think so. If one looks at the specification, there is no question that the specification describes preferably the inclusion of both shoulders 50A and 50B. Also, but in column 5 at lines 37 forward, it says in all cases the co-action of the shoulder 50A with the groove serves to retain the connector body and locking member in an assembled state during storage handling installation, etc. In all cases, preferably both in all cases 50A. Similarly, if we look at the specification, it explains in the prior art that the problem with the earlier compression type cables was that the components would disassemble. The connector body and the faster member were separate or that they would disassemble. It includes at column 2 an object to correct that problem so that it stays together. It is inseparably coupled as expressly claimed. So, your honor. I have one more question. I'd like to ask you. In column 4 line 18, where it says preferably comprises, why isn't perhaps a better reading of the use of the word preferably saying it preferably includes 50A and 50B as opposed to some other mechanism? Not that it means includes 50A and preferably 50B. It's not worded so that the natural reading is the second of those, which is what you're arguing. You understand what I'm saying? I do, your honor. I'm not certain that I have the expertise of grammar that you do, but I think that our reading in the context of the specification in its entirety is a fair reading, that it's saying 50A and you can include 50B that is consistent with adding, having additional dependent claims that include those additional functions that are required 50B. And then with respect to the corresponding structure, ultimately the commission's construction requires that the second element stop forward movement and yet 50B stops forward movement. Yet 50B is not disclosed to stop forward movement. It's expressly disclosed to permit forward movement. It has an inclined front face to permit that to work and we could submit, your honor, that in fact if you made that in a different hypothetical way as the commission has, which is not proper, it has to relate to the real structure and that structure has to be linked to function, but 50B instead permits forward movement and it has to permit forward movement. And if it doesn't, 50B will never get into groove 52 because it will be stopped when it meets. So what does 50B do then? What does it, what it does, your honor, is this is a compression device. So once you push the in, you are compressing the cable. That compression, as our commercial embodiment shows, actually often is enough to hold it there. But if you want to have an extra locking feature, 50B will then go into the groove. It has a perpendicular rear face and it will not permit it to back out. You say it's a belt and suspenders structure. It is a belt and suspenders. Okay, why don't we hear from your opposing counsel and we'll reserve a couple of minutes of rebuttal for you. Mr. Valencia. Good afternoon and may it please the court. Here's why we need the second shoulder 50B. Reason we need that is because the second position in the claim is not defined without it. If you look through the specification, the specification uses synonymously second position, second clamped position, and final clamped position. They're all the same thing. And so PPC suggested a moment ago that the clamping is actually a gradual operation. So as you're sliding the locking member into the connector body, there's more and more compression being placed on it such that the clamping actually occurs at more than one location. That can't be a second position. We're not talking about a continuum here. We're talking about one position and as the claims make clear, they refer back to said second position. So we need the second shoulder. The only thing that 257 patent tells us about this second position, the second clamp position, this final clamp position, is that the second shoulder 50B is in that group. That's all we know because we know that the clamping occurs gradually and there's that's not a position. That's a continuum. Well, there is a position when you reach the end of the road here. It looks to me like, just looking from the figures, as you can only go so far with this structure, right? Right. And that's what I understand. If you look at it, do we agree that figure 5 is the second position? We do. Figure 1 is the first position? Yes. When you get to figure 5, you're not going any more towards the left than you are right there. That's the end of the road. Right, we agree. And it seems to me that it's hard to say, correct me if this is wrong, but it's hard to say that 50B has any role to play in accommodating the limited axial movement of the locking member between the first and second positions because the 50B isn't even engaged until you're already at the end of the of the trail and you, it snaps into position when you're at the second position. So, how does that 50B accommodate the movement between the first and second position? Well, Your Honor, the specification is pretty limited on this point. The specification doesn't expressly disclose what limits forward movement, whether it's the O-ring, whether it's the second shoulder, but it's our view that it's not so important as to what does the active limiting as it is that we have. I'm addressing a slightly different point now. You can come back to that, but let me just get your views on this. But looking at the language, and I'm really at, in claim one, I'm at lines 10 through about 13, that the, it talks about the engagement means and then some of the functions and it says that it, the function is to accommodate limited axial movement of said locking member relative to said connecting connector body between the first position and second position. That's sort of the core of what the claim describes the engagement means is doing, and I don't see why, in the context of this claim at least, I don't see why 50B has a role in that function. The 50B may or may not have a role in accommodating, but the, but the entire function includes limited between said first position and a second position. And in order to know what this limited means, we need to know where point B is. In other words, if we're describing movement between, accommodating movement between point A and point B, we need to know precisely where point B is. But we do. Point B is at the point that the device has reached the shoulder that it reaches in figure five, right? That's, that's the second position. That position would be the same whether you filed off 50B or not. Now, it might have some room to pull back in the other position, in the other direction, if you didn't have the extra lock on 50B, but, but that's the second position. We know where it is, right? We, it's our view that the second position is the second position, and the only thing we know for sure about that is that 50B engages the group. The, as I mentioned a moment ago, the clamping occurs gradually, so the clamping can't define the second position, because we wouldn't have a position. Well, but the shoulder 46 is what defines the second position, because things can't go any farther than shoulder 46. Well, that's, that's what the figure appears to show, but really the, the, the specification doesn't say any of that. Okay. The specification is very limited. It doesn't say that, you know, it stops at the end of the connector body. And so, so that's kind of, the specification is limited, and the Commission read the specification final clamp position as being the second position, and I don't think the specification supports any other interpretation of that second position. The other thing... I understand that argument. I, I am troubled by the argument that limited means that it has to limit, limit forward movement as well as to accommodate it. That seems to me, it's sort of a speculative reading of the claims, and then if that's the case, you know, either 58 or 50B, in fact, it seems to me, limits forward movement. Both of them, to some extent, accommodate forward movement. So, that part of it seems to me perhaps to be wrong. So, the Commission's analysis, in its opinion, really discusses three main points. The first point being that you need a second position. This is a, what we've been talking about for a few minutes now, and that position must include the second shoulder in the groove 52, and, and, in fact, the specification does define the second position as when that happens. The, the second point that the Commission looked at was, and the Commission found that the second shoulder, it does have something to do with limiting, and, but the Commission... What, forward or backward? Forward, and, and, but the Commission didn't need to say that. The Commission could have, could have just said, look, we need a, we need a limit. So, that was the, the physics of it. I don't see how it limits forward motion. I can see how it limits backward motion. So, the Commission read the specification, all the finality language to say this thing doesn't go anywhere, and the only thing that we know for sure is that that second shoulder is in the groove. So, you know, the specification could support a number of different readings. It's our view that the Commission read it reasonably, but, but the more important point is that active limiting is not part of the specification, excuse me, part of the claim. So, all we need is that, all we need the shoulder for at this point is that we need a second position, and, and that's essentially what we're, we're saying that's the more important part. In order to have limited movement, you need a limit, and so we know the limit to be the second position, and you need to make that a concrete single position as opposed to a continuum. So, the Commission's theory was that 52, when the 50B engages with 52, that somehow that limits forward movement, right? The Commission did draw that conclusion based on, on its view that it doesn't move forward at all after that. I'd also like to, aside from the second position point that we've been talking about and also the point your honors raised, I'd also like to point out that this case is unusual in terms of means plus function, because typically these patentees reserve the magic language means for the claims. The patentee told us in, in the specification that my engagement means is preferably this. The, the patentee didn't suggest that there were any alternate embodiments. This is, this is the patentee telling the public that, that this is the meets and bounds of my claim, and he could have, he could have let the description speak for itself, or he could have opted not to use means plus function language altogether. We think that this case is, is on all fours with the Nomos case. The Nomos case was directed to a means for generating an ultrasound image in which the patentee only disclosed a single embodiment, and the court required a fixation device to be part of that means for generating an ultrasound, because every single depiction and description included this fixation device. And, and what it did, this actually ended up rendering one of the dependent claims directed to a mounting means superfluous. So, you know, means plus function application trumped the claim differentiation argument, which PPC now makes. Aside from that, this case is also similar to Nomos, because in Nomos the patentee, again, said my means for generating an ultrasound image includes this, or may include this. That's, that's what makes these two cases unusual, and this should be controlled by Nomos. Now, unless the court has any further questions, I'll just conclude my remarks there. Thank you. Thank you, Mr. Valencia. Your Honor, I may be dangerously out of time, so I will follow your lead. Well, we'll give you, we'll give you a couple of minutes. All right. Number one, I, I heard from the commission today that active limitation is not part of the claim, or is not necessarily part of the claim. Until today, it has been absolutely a necessary and essential function that they've added, and I'm glad to hear that it's not part of the claim now. Number two, the commission has expressed the view to the court that the second position is defined as the preferred embodiment when the shoulder 50B is in the groove, and that is not true. The, the patent at column four, line 15, refers to a second clamped position. Clamped being the operative word, that's the clamping or the gripping that's required by claim one. It, at column four later, line 60, refers that final locking in the clamp position occurs, that's directed to the locking feature, and then again, it says clamp position. It doesn't say when it's locked, that's the second position of the claim, and similarly, if column five, lines 44, it says the shoulder 50B coax with groove to retain the locking membrane in its final clamp position. It used clamp position, fine, it doesn't say second position means when 50B is in the groove. Then they explain that today, that the second shoulder may or may not accommodate. Well, if it doesn't accommodate, then it is not being described as being the linked associated structure to the claimed element, nor is it necessary to achieve anything, because they've expressed it as achieving limiting movement. Otherwise, it's not achieving anything. The accommodation is provided by shoulder 50A, which has the inclined surface, which allows and accommodates the forward movement, not the backward. Given your theory of the case, why in the world did the patent drafter refer to 50A and 50B as the engagement means? What engaging that's described in the claims is done by 50B at all? I thought your theory was that it really isn't doing any engaging, in the sense that the term engagement is used in claim one. That is our position. Why in the world did the drafter not say engagement means 50A and locking means, or a locking tab or something, 50B? That looks... Well, I think that once one looks at a patent and wishes it could have been written a little differently than we perhaps would have all done there. But if you look at that with your honor, it says engagement means serve to internally couple the locking lever to the connective body for limited axial movement to both the inner... That engagement means that is... 50A meets all the limitations of that first sentence. Well, that may be. And then it says the engagement means perfectly. What the problem is that it suggests that 50B can sometimes be part, at least under, even under your construction, 50B can sometimes be part of the engagement means. So a construction which says that it can never be part of the engagement means seems to be difficult. I would agree with you 100%. Clearly, if I'm going to stand in front of this court and say 50B is a number in dependent claims two and four, and I am in front of this court saying that, then clearly 50B can be part of the engagement means. But it does not have to be part of the one. And it can be an alternate engagement means. The engagement means either can include 50A alone, which meets all of the functional limitations in the claim one, or it can be 50A and 50B, which is the preferred embodiment, which includes the locking feature, which doesn't do anything as to limiting forward movement. It only retains it in a locked position and does not allow it to move rearward. I think I've taken my time. Thank you. Thank you. Thank both counsel. The case is submitted. All rise. The Honorable Court is adjourned until tomorrow morning at 10 o'clock AM.